UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

```
FELIPE FRIAS, et al.,           )
                                )
     Plaintiffs,                )
                                )   No. 2:18-cv-0076
v.                              )   Chief Judge Crenshaw/Brown
                                )   **Jury Demand**
PATRICIA FRIAS, et al.,         )
                                )
     Defendants.                )
```

**TO:   THE HONORABLE WAVERLY D. CRENSHAW, JR.,
       CHIEF UNITED STATES DISTRICT JUDGE**

## REPORT AND RECOMMENDATION

Presently pending is the defendant Mark T. Clausen's motion to dismiss for improper venue or in the alternative to transfer this case to the United States District Court for the Northern District of California (Docket Entry 5)[1]. The plaintiffs have responded (Docket Entry 11). On December 19, 2018, the Court directed the parties to file briefs on whether the Rooker-Feldman Doctrine applied in this case (Docket Entry 18). Unfortunately, as of the date of this Report and Recommendation, neither party has filed anything with the Court.

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that this case be **DISMISSED** for lack of jurisdiction under the Rooker-Feldman Doctrine, or alternatively, if the case is not dismissed, the defendant's motion be **GRANTED** to the extent that the

---

[1] The docket sheet does not indicate that the defendant Patricia Frias has been served. The plaintiffs have been cautioned that the case against deft Frias is subject to dismissal if service of process is not accomplished within 90 days, or such additional time as the Court may, upon motion, grant (Docket Entry 18).

Court transfer this case to the District Court for the Northern District of California where the vast majority of the activity complained of occurred and where there is active litigation regarding the heart of the plaintiffs' complaint.

## BACKGROUND

The amended complaint filed on September 12, 2018 (Docket Entry 4) lists 33 causes of action. As general background, it appears that the plaintiff Felipe Frias was married for a number of years to the defendant Patricia Frias. Divorce proceedings were apparently started in California in July 2003 (Docket Entry 4). Although it is not absolutely clear, it appears that the marriage was dissolved by order of the Superior Court of California, County of Sonoma on March 27, 2006 (Docket Entry 11, Page ID 114). From the pleadings, it appears there was constant litigation between these two parties over property, support, the sale of their former home, the disposition of the proceeds once the home was sold, and contempt proceedings which resulted in a fine and a 10 day jail sentence for the Plaintiff. As will be shown below, all of the activity complained of in the 33 count complaint involves California litigation and alleged misconduct by the defendant wife and an attorney in California courts, with the exception of litigation started in Chancery Court for White County, Tennessee on April 20, 2017 (Docket Entry 11, Page ID 113), to attempt to enforce California judgments against Mr. Frias.

2

The first 8 counts of the amended complaint (Docket Entry 4) allege Ms. Frias made false statements in the California Superior Court in Sonoma County: 1) on November 7, 2014, concerning the amount of money she had made as mortgage payments; 2) on March 20, 2015, that she had paid $329,307.07 in mortgage tax and insurance payments, and as a result Mr. Frias was directed to pay Ms. Frias $213,779.45 (sic); 3) on November 7, 2014, claiming mortgage payment statements which were not in fact mortgage statements; 4) on March 20, 2015, by requesting court intervention and securing orders adverse to Mr. Frias without serving him or giving him a chance to be present to testify; 5) concerning community property in an effort to obtain money from the sale of the house through false statements, pleadings, and exhibits; 6) on March 20, 2015, by misstating court orders to obtain a more favorable ruling from the California judge; 7) on March 20, 2015, concerning the ownership of property in Mexico; 8) concerning the non-delinquency of a mortgage with Wells Fargo.

Count 9 for general negligence seems to allege that due to false statements about mortgage and other payments, Ms. Frias obtained a favorable judgment on August 3, 2015, and that she obtained this favorable ruling through the acts of her lawyer, the defendant Mark T. Clausen.

Count 10 is another count for general negligence alleging that according to a real property division order of August 29, 2007, Ms. Frias was granted exclusive use of the family residence and ordered

3

to maintain it in excellent and sellable condition until it was sold. Mr. Frias alleges that Ms. Frias used the property as a rental and failed to keep it in proper condition, thereby causing a devaluation of approximately $60,000.00.

Count 11 is for an intentional tort alleging that Ms. Frias, in California and in Tennessee, intentionally forged documents, committed perjury, and filed false statements which persuaded the California Court and the Sonoma Court to surrender the plaintiffs' homestead in White County, Tennessee to satisfy judgments obtained by Ms. Frias. The plaintiffs allege that this action has caused great emotional distress and a reoccurrence of post traumatic stress disorder. Mr. Frias alleges that Ms. Frias had been arrested for violating a protective order, and had given their daughter an overdose of medication from which she subsequently died of affixation.

Count 12 alleges fraud by Ms. Frias and her attorney Mr. Clausen for failing to notify Mr. Frias of court hearings, and then using Mr. Clausen's influence to accuse Mr. Frias of contempt for failure to appear.

Count 13 alleges fraud on June 29, 2017, when Mr. Frias submitted a response to contempt charges against him and Mr. Clausen used his influence to obtain a favorable ruling from a California judge, thereby denying Mr. Frias an opportunity to be heard and due process and equal protection of the law.

4

Count 14 alleges fraud on May 18, 2015 when Mr. Clausen filed a civil complaint, which was apparently subsequently dismissed. Although Mr. Frias was never served, he alleges that the case was discussed with the court by Mr. Clausen without Mr. Frias having notice or being present. He alleges that, somehow, this allowed him to be charged with contempt and sent to jail for 10 days and fined $2,000.00, without due process of law.

Counts 16 and 17 allege fraud that on January 16, 2018, Mr. Clausen offered and prepared false evidence to the Superior Court in California misstating Mr. Frias' employment. It is alleged that Mr. Clausen also stated to the same judicial officer that Mr. and Ms. Frias continued to live together through 2007 in order to entitle Ms. Frias to a portion of Mr. Frias' medical retirement. Mr. Frias alleges that the statement that they continued to live together through February of 2007 was false.

Counts 18 - 31 all allege fraud through activities occurring on January 22, 2018, in materials submitted to a California court: Count 18 concerns spousal and child support; Count 19 concerns the wording of a California court order; Count 20 concerns the time limit for the sale of the California home; Count 21 concerns statements of the California court and docket; Count 22 concerns statements relating to Mr. Frias' efforts to secure release of escrow funds from Wells Fargo from the sale of the California home; Count 23 concerns false statements about Mr. Frias' former employer; Count 24 concerns false statements alleging that Mr.

5

Frias had been physically and verbally abusive to Ms. Frias and the children; Count 25 concerns false statements that Mr. Frias had been abusive to Ms. Frias over the course of their marriage, when in fact, Ms. Frias had been abusive to Mr. Frias and had been arrested for violating a protective restraining order on April 25, 2005; Count 26 concerns the offering of false evidence as to who was allowed to remain in the California home; Count 27 concerns the submission of false evidence that the home was not sold for 7 years during which time Ms. Frias paid the mortgage when, in truth, she refused to make 68 payments on the mortgage principle; Count 28 concerns false evidence that Ms. Frias paid the taxes when, in fact, she did not; Count 29 concerns false statements that Ms. Frias paid for repairs and maintenance on the house when, in fact, she failed to do so and caused damage to the home through remodeling in order to rent part of it out; Count 30 concerns false evidence to the California court stating that Mr. Frias did not pay toward the support and maintenance of Ms. Frias or the children when, in fact, the children were not involved in any court order; Count 31 concerns false evidence relating to the transfer of funds from Wells Fargo bank which resulted in a court order against Mr. Frias on April 3, 2015 based on the fraudulent documents submitted by Mr. Clausen on Ms. Frias' behalf; Count 32 concerns fraud and intentional infliction of emotional distress alleging that Mr. Clausen, by filing false documents, intentionally inflicted emotional pain and distress on Mr. Frias and through his activities

6

improperly persuaded California court system to have Mr. Frias and Ms. Dunnavant to surrender their homestead; Count 33 concerns fraud with the intentional infliction of emotional distress alleging that on January 1, 2018, Mr. Clausen presented false evidence to the California court which convinced the judge not to review or consider Mr. Frias' answer thereby causing a potential mental breakdown by Mr. Frias.

## LEGAL DISCUSSION

The Supreme Court in *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), held that the appellate jurisdiction to reverse or modify a state court judgment is lodged initially by Section 25 of the Judiciary Act of 1789...28 U.S.C. § 1257 exclusively in the Supreme Court. Federal District Courts are empowered to exercise original, not appellate, jurisdiction. Plaintiffs that litigate and lose in a state court may not essentially invite Federal District Courts to review and reverse unfavorable state court judgments. Such attempted appeals of state court judgments in a federal district court are properly dismissed for want of subject matter jurisdiction. *Exxon Mobile* at 283.

The Magistrate Judge directed the parties to brief this doctrine by December 19, 2018 (Docket Entry 18). Unfortunately, neither party filed anything.

The plaintiffs in this matter are complaining about various state court judgments entered against them almost exclusively in California, with the exception of a case filed in Chancery Court

for White County, Tennessee, in an effort to enforce the California judgments. The plaintiffs plead exclusively that these judgments were obtained through fraud, false statements, and other procedural irregularities in California by California courts. Essentially, the plaintiffs request this district court to examine, review and reverse those judgments. This, as the Supreme Court noted in *Exxon*, is reserved for the Supreme Court.

In *Exxon*, the Supreme Court noted that this doctrine was a limited one and should not be overly extended to preclude litigation which did not involve a need to review state court proceedings. The 6th Circuit has also addressed the extent of the Rooker-Feldman Doctrine in *Pletos v. Makower Abatte Guerra Wegner Voller, PLLC,* 731 F.App. 431 (6th Circuit 2018). In that case the 6th Circuit extensively discussed the application of the Rooker-Feldman Doctrine to state court proceedings. The district courts dismiss a case only when the cause of the plaintiff's complaint is the state court judgment itself. The District Court is directed to look at the source of the injury the plaintiff alleges in the federal complaint and determine if the injury is the state court itself or another source such as a third party's actions. However, if the third party's actions are the product of a state court judgment, then the plaintiff's challenge to those actions are in fact a challenge to the judgment itself. *Pletos* at 434-35. It appears that the Pletoses were arguing that their injuries were not

8

caused by the state court judgment itself but by action of various individuals seeking to collect on that judgment.

In this case, there are California state court judgments which apparently are final and there is action by Ms. Frias to collect on those judgments in Tennessee. The Tennessee collections appear to be solely based on the California judgments. Thus, the plaintiffs are seeking a second bite at the apple. To the extent there were irregularities in the California judgments, the plaintiffs' remedies are through appeals in the California court system and ultimately a request for review by the United States Supreme Court.

Even if the Rooker-Feldman Doctrine was not applied to this case, and this court does have jurisdiction, the motion to dismiss or transfer (Docket Entry 5) should be granted to the extent that this case be transferred to the Northern District of California as requested.

From a review of the amended complaint (Docket Entry 4) as summarized above, it is abundantly clear that the plaintiffs' claims all stem from activity in California and judgments in California courts. The only action taking place in Tennessee is the filing of a complaint in Chancery Court for White County, Tennessee, to enforce the California judgment in favor of Ms. Frias.

The Court takes judicial notice that the Chancery Court entered a judgment for Ms. Frias in that case and the Tennessee Court of Appeals has affirmed the Chancellor's decision. *Frias v.*

9

*Frias*, 2018 Westlaw 5435085 (Ct. Of Appeals of TN, 2018). The Court of Appeals memorandum opinion by Judge Dinkins notes that the Friases were declared divorced in March 2006 and the litigation has continued since the divorce over various matters pertaining to the parties' property division. He noted that at some point Mr. Frias moved to White County, Tennessee and purchases two parcels of real estate. On November 7, 2016, the California family law court ordered Mr. Frias to pay Ms. Frias $205,000.00 plus interest for violating previous orders of the court by withdrawing approximately $205,000.00 from the parties' joint account. On April 20, 2017, Ms. Frias filed a complaint in Chancery Court seeking enforcement of the California judgment pursuant to T.C.A. § 26-6-101 et seq, and to attach the real property Mr. Frias had purchased in that county. A trial was held in the matter and Chancellor Dinkins noted that the Statement of Evidence approved by the trial court recited the following:

> This matter came on to be heard the 6th day of November, 2017 before the Honorable Ronald Thurman upon the sworn Complaint to Enforce a Foreign Judgment and the Attachment of Certain Real Property By Constructive Trust bought by the plaintiff, PATRICIA FRIAS, the ex-wife of defendant, FELIPE FRIAS.
>
> Plaintiff's counsel presented a certified order (Exhibit 1, filed without objection) entered by the Family Law Court for the Superior Court of California, Sonoma County, Case # SFL-20214 rendered on or about November 7, 2016 ordering the defendant, FELIPE FRIAS, to pay the plaintiff, PATRICIA FRIAS, the principal sum of $205,000, plus legal interest at ten percent (10%) per annum from March 29, 2015.

The order further provides that it may be enforced as "a sister state judgment." Additionally, FELIPE FRIAS was ordered to a show cause hearing on May 17, 2017 for "taking the funds in violation of the court orders."

The plaintiff called FELIPE FRIAS as an adverse witness and he testified that the parties (he and his ex-wife) have been in protracted litigation in the Family Law Court for the Superior Court of California, Sonoma County since early 2000 when the divorce proceeding began. He further testified that he filed a motion to sell the parties marital home and same was ordered as of November 7, 2014. On April 4, 2015 an Order of Disposition regarding the sale proceeds was rendered and the wife was to get $222,935.11 from the net proceeds. Thereafter, Mr. Frias admitted that on March 25, 2015 he withdrew the sum of $205,469.71 from Wells Fargo Bank (Wells Fargo withdrawal slip filed as Exhibit 3), same being in violation of the Family Court order and resulting in the judgment identified as Exhibit 1. He then left the state of California and moved to White County, Tennessee and purchased a home on March 31, 2015 in the amount of $165,000 (Warranty Deed filed as Exhibit 2). Thereafter, Mr. Frias purchased additional property in White County with the wrongfully taken funds as identified by Exhibit 4. Mr. Frias stated that he also put the name of Theresa S. Dunnivant on the referenced deeds because she had been so good to him. Mr. Frias did not deny that he used the misappropriated funds for the purchase of these properties.

Mr. Frias stated that he was held in contempt of court on June 29, 2017 in California and was found guilty of violating both prior court orders rendered by the Family Law Court and sentenced to ten (10) days in jail with a $2,000 fine and simultaneously, the court reconfirmed the validity of both of the prior orders, specifically the order of November 7, 2016. Mr. Frias thereafter served five (5) days in jail on the contempt violation but did not pay the imposed fine.

Mr. Frias attempted to offer into evidence numerous extraneous uncertified pleadings from the California court, same being marked for identification purposes only and identified by Exhibits 7, 8, 9, 10 and 11.

There were no other witnesses or evidence presented in the trial of this proceeding and the court rendered its

11

decision favorable to the plaintiff authorizing the enforcement of the Foreign Judgment and imposing the constructive trust in favor of the plaintiff establishing her ownership in the real property purchased in White County, Tennessee with the funds wrongfully taken from the state of California.

The Court of Appeals found that there was no proof concerning fraud offered at the Chancery Court trial. The Court may take judicial notice of other court proceedings.

The plaintiffs' response to the motion to dismiss or transfer (Docket Entry 11) is simply a rehash of the plaintiffs' complaint alleging that Mr. Clausen perjured himself by offering and preparing false evidence. The statements are for the most part repeats of the statements that were made in the California court and as the Magistrate Judge has noted above, those are matters that should be handled by the California court. It appears to the undersigned that since the vast majority of the activities, court orders, pleadings, and other matters took place in California, that it is best that the matter be resolved in federal court there if the case is not dismissed for lack of jurisdiction.

In considering whether to transfer venue under 28 U.S.C. § 1404(a), the court should consider the private interest of the parties, including their convenience and the convenience of potential witnesses, as well as other public interests and concerns, such as systemic integrity and fairness which come under the rule book of interest of justice. *Moses v. Business Card Express, Inc.*, 929 F.2d 1131,1137 (6th Cir. 1991). Generally, a plaintiff's choice of form is given substantial weight especially

where the plaintiff also resides in the chosen form. A review of the pleadings and the actual location of the harms alleged weigh against that. The vast majority of the alleged fraudulent conduct involves California proceedings, California judgments, and California court orders. The various witnesses the plaintiffs would need to establish the fraud claims, with the exception of themselves, appear to be exclusively in California. Either the plaintiffs or the defendants will have to travel to the jurisdiction handling the case. However, the witnesses appear to be exclusively in California. To the extent witnesses will be needed, live witness testimony is obviously preferred to deposition testimony. The witnesses could not be compelled to travel to Tennessee for live testimony. The judgments sought to be enforced or to be changed, all lie in California. The Tennessee Judgment is based on the California Judgment unless the plaintiff case could fraud which he has failed to do as noted by the TN Court of Appeals decision cited above.

After carefully weighing the various factors, the Magistrate Judge believes that if the case must be heard in federal court, it is best heard in California. The court should therefore exercise its broad discretion to decide transfer motions under 1404(a) and transfer this case to the Northern District of California. See *Red Bull Associates v. Best Western Intern., Inc.*, 686 F.Sup. 447 (S.D.N.Y. 1988).

**RECOMMENDATION**

13

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that this case be **DISMISSED** for lack of jurisdiction under the Rooker-Feldman Doctrine, or if the case is not dismissed, that it be **TRANSFERRED** pursuant to 28 U.S.C. § 1404(a) to the Northern District of California for such further proceedings as may be necessary.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 25th day of January, 2019.

/s/   Joe B. Brown
JOE B. BROWN
United States Magistrate Judge